IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANNIE V. YATES, | ) | CASE NO. 5:06 CV1940 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| JULIUS WILSON, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is Dannie V. Yates' ("Yates") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on August 14, 2006.  Yates is under post-release control pursuant to a journal entry of sentence in the case of *State v. Yates,* Case no. 2002-10-3025 (Summit County 2003).  For the reasons set forth below, the magistrate judge recommends that the court deny Yates' petition.

I

The September term of the Summit County grand jury indicted Yates on one count each of aggravated burglary, intimidation of a crime victim or witness, disrupting public services, and possession of criminal tools and on two counts of domestic violence.  On January 13, 2003 Yates filed *pro se* a motion to dismiss the charges against him on the

grounds that he had not been given a preliminary hearing and because his right to a speedy trial had been violated.

Yates subsequently agreed to plead no contest to burglary in exchange for the dismissal of all other charges.  The state appellate court reviewing Yates' case found that Yates' agreement to plead no contest included an agreement that Yates would be sentenced to a four-year term of imprisonment.  Yates entered his plea of no contest on September 29, 2003, and the court sentenced him to four years' imprisonment and up to three years of post-release control.

Yates timely appealed his conviction and sentence.  Yates' attorney failed timely to file a merit brief, and the state appellate court consequently dismissed his appeal.  Yates moved the court to reconsider its decision, and the court denied this motion.  Yates moved to reopen his appeal.  The state did not oppose this motion, and the court granted Yates' motion to reopen.  Yates raised three assignments of error in his appellate brief:

FIRST ASSIGNMENT OF ERROR

The trial court committed reversible error when it sentenced Mr. Yates to a sentence greater than the "statutory maximum" as defined by the U.S. Supreme Court in *Blakely v. Washington* (2004), 124 S. Ct. 2531, 2537, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

SECOND ASSIGNMENT OF ERROR

The trial court committed reversible error when it sentenced Mr. Yates to a greater than minimum sentence, in violation of R.C. 2929.14(B).

THIRD ASSIGNMENT OF ERROR

The trial court violated appellant's due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and erred under Crim.R. 11(C)(2)(a) by accepting Mr. Yates' guilty plea without first determining that he understood the nature of the charge to which he was

2

pleading no contest.

On August 10, 2005 the state appellate court overruled Yates' assignments of error and affirmed the judgment of the trial court.

Yates timely filed a notice of appeal in the Ohio Supreme Court.   In his memorandum in support of jurisdiction, Yates raised three propositions of law:

FIRST PROPOSITION OF LAW

A trial court violates the Sixth and Fourteenth Amendments to the United States Constitution when it sentences a criminal defendant to a sentence greater than the "statutory maximum," as defined by the U.S. Supreme Court in *Blakely v. Washington* (2004), 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403.

SECOND PROPOSITION OF LAW

A trial court commits reversible error when it sentences a criminal defendant to a greater than minimum prison sentence without making the necessary findings required by R.C. 2929.14(B).

THIRD PROPOSITION OF LAW

A trial court violates a criminal defendant's due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and violates Crim.R. 11(C)(2)(a) when it accepts a no contest plea without first determining that the defendant understood the nature of the charge to which he was pleading no contest.

On December 14, 2005 the Ohio Supreme Court denied Yates leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On September 15, 2004 Yates filed in the trial court a petition for habeas corpus. Yates argued that he had been denied due process and equal protection of law when he was not given a preliminary hearing in violation of Ohio Crim. R. 5.  Yates contended that this violation deprived the court of jurisdiction over his case.  The trial court dismissed

3

Yates' petition, noting that the Ohio remedy in habeas is not available if a petitioner has a plain and adequate remedy available and that Yates' direct appeal, then still pending, was such a remedy.

Yates timely filed in the state appellate court a notice of appeal of the dismissal of his petition for habeas relief.  On September 8, 2005 the state appellate court affirmed the judgment of the trial court.  The appellate court also noted that Yates had not explained why a failure to provide a preliminary hearing would deprive the trial court of jurisdiction and that Yates' petition appeared to be directed at alleged irregularities rather than at matters which would render the conviction void.

Yates timely appealed the appellate court's judgment to the Ohio Supreme Court. On March 8, 2006 the Ohio Supreme Court denied Yates leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On November 14, 2005 Yates moved in the state appellate court pursuant to Ohio App. R. 26(B) to reopen his first appeal on the grounds of ineffective assistance of appellate counsel.  The state appellate court denied Yates' motion as untimely on December 19, 2005.  Yates moved the court to reconsider its decision, and the court denied his motion.

Yates timely appealed to the Ohio Supreme Court the state appellate court's denial of his motion to reopen.  In his memorandum in support of jurisdiction, Yates asserted two propositions of law:

> Proposition of Law No. I:  Procedures used by the Akron Municipal Courts and State prosecution were/are constitutional violations that void subject-matter jurisdiction to the Court of Common Pleas.

4

<u>Proposition of Law No II</u>:  The Seventh District Appellant [sic] Court failed to address the direct issues presented, violating the redress clause of the constitution.

(Punctuation altered from the original.)   On January 25, 2006 the Ohio Supreme Court denied Yates leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

Yates filed a petition for a federal writ of habeas corpus in this court on August 14, 2006.  Yates raises four grounds for relief:

**GROUND ONE**:  Trial court did not obtain jurisdiction.

A:  Municipal court failed to give full advisement of rights during initial appearance hearing.   B:  A[n] illegal/unconstitutional program was used to void rights.   C:  Defendant's [sic] processed by the Akron Municipal Courts are predisposed to indictment prior to the initial apperance [sic] hearing.   D:   Indictments are not obtained pursuant to Ohio law; they are obtained by use of an illegal, "therefore unconstitutional" procedure.

**GROUND TWO**:  Petitioner was denied adequate review of conviction.

The Appellant [sic] Court was aware that Appellant [sic] counsel was performing substandardly and failed to assist in providing competent counsel.  The Court also, "although requested by Petitioner", failed to inform that appeal had been dismissed, which severely hampered Petitioner in filing a timely application for reopening.

**GROUND THREE**:  Petitioner was subjected to ineffective assistance of counsel.

Counsel failed to timely prosecute appeal causing dismissal.  Counsel had appeal reinstated, but, still proceeded ineffectively, i.e., not adequately addressing issue's [sic] presented; presenting highly questionable issue's [sic]; not presenting major constitutional violations, although being aware of them; failing to keep the Petitioner informed of appeals status.

**GROUND FOUR**:  Appellant [sic] court erred in its ruling denying Petitioner redress.

The Appellant [sic] Court did not review the issue(s) presented in regards to Ohio law, the constitution of Ohio or the United States Constitution.  The Appellant [sic] Court misstated fact(s).

Respondent filed a Return of Writ on February 9, 2007 (Docket #11).  Thus, the petition is ready for decision.

II

*A.    Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Title 28 U.S.C. § 2254(a) provides in relevant part, "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Federal jurisdiction attaches on a petition for a writ of habeas corpus when an petitioner in custody files for the writ.  Jurisdiction is not defeated solely by the release of the petitioner before completion of proceedings on the application.  *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).  When petitioner continues to suffer "collateral consequences" of an imposed sentence sufficient to give the petitioner "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him," the cause is not moot.  *Id.* at 237 (quoting *Fiswick v. United States*, 329 U.S. 211, 222).

Collateral consequences are sufficient to avoid mootness when they are severe, immediate (i.e., not speculative), and not shared by the public generally. *Hensley v. Municipal Court*, 411 U.S. 345, 351-52 (1973). Collateral consequences sufficient to avoid mootness include restraints on liberty accompanying release on recognizance pending trial (*Id.*; *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 319-20 (1984)) and civil disabilities resulting from a felony conviction (*Carafas*, 391 U.S. at 237). They do not include such nonstatutory consequences as diminished employment prospects or possible effects on sentences in potential future criminal proceedings (*Lane v. Williams*, 455 U.S. 624, 632-33).

Yates was sentenced and is currently under post-release control within the geographic jurisdiction of the court. This court has jurisdiction over Yates' petition.

B.   *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All Yates' claims involve legal issues which can be independently resolved without additional factual inquiry.

C.   *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160

7

(6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  Federal courts lack jurisdiction to consider any claim that was not fairly presented to the state courts.  *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168, 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that a claim is a federal claim, "not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner need not cite "book and verse on the federal constitution,"  *Picard*, 404 U.S. at 278, to apprise state courts that his claim is based on federal law:

> In determining whether a petitioner has fairly presented a federal constitutional claim to the state courts, a habeas court may consider whether (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law.

*Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *see also Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 193-94 (2d Cir.

8

1982)).

Yates has exhausted direct appeals for all his claims.  Because Yates has no remaining state remedies, his claims have been exhausted.

D.    *Procedural default*

Respondent argues that Yates has procedurally defaulted part of his first and all of his third grounds for relief.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

9

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent contends that Yates has procedurally defaulted ground one as it relates to jurisdiction and all of ground three.  Ground one asserts in relevant part that the Akron Municipal Court failed to obtain jurisdiction over Yates because of a faulty indictment.

Ohio Crim. R. 12(C)(2) requires a defendant to raise before trial all defenses based on defects in an indictment, information, or complaint.  Under Ohio law, failure properly to raise in the trial court defenses based on such defects waives those defenses.  Ohio Crim. R. 12(H).  Yates failed to raise in the trial court a claim that his indictment was defective. Yates waived, therefore, this claim, and it may not be raised here.

Respondent also contends that Yates procedurally defaulted ground three, ineffective assistance of appellate counsel.  In his application to reopen his direct appeal, Yates argued that during his direct appeal he had been deprived of effective assistance of appellate counsel in violation of the Sixth Amendment.  When Yates appealed the appellate court's denial of his application to reopen to the Ohio Supreme Court, however, he alleged that the denial of his application to reopen "violated [his] right to Redress; Due Process and Equal Protection by knowingly allowing the appeal process to be subjected to ineffective assistance of counsel; and thereafter denying Appellant's application for reopening . . . when the Court itself contributed to the improper filing of said application."  Memorandum in Support of Jurisdiction, Answer, Exh. 30, p. 5.  Respondent argues that because Yates failed to present to the Ohio Supreme Court as an independent claim his contention that he was deprived of effective assistance of appellate counsel, respondent contends that

10

Yates has procedurally defaulted these claims.

Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d. 147, 154, 512 N.E. 2d 962, 967 (1987).  Yates did not assert in the state appellate court that a failure to reopen his direct appeal would violate his rights to redress, due process, and equal protection.  The Ohio Supreme Court dismissed Yates' appeal without opinion.  Where the state courts are silent as to the reasons for denying a petitioner's claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar."  *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  This court must assume, therefore, that the Ohio Supreme Court dismissed Yates' appeal for failure to raise his claims in the state appellate court before raising them in the Ohio Supreme Court.  Thus, Yates has not fairly presented his claim of ineffective assistance of counsel to the highest court in Ohio.

Yates does not argue that Ohio's rule that a defendant timely raise in the trial court any claim regarding defects in an indictment or Ohio's rule that appellants raise claims in the state appellate court before raising them in the Ohio Supreme Court are not adequate and independent grounds upon which Ohio may rely to foreclose habeas review.  Nor does Yates show cause and prejudice for his defaults or contend that failure to consider the defaulted claims would result in a fundamental miscarriage of justice.  The court should not, therefore, excuse Yates' procedural defaults.

For these reasons the magistrate judge recommends that the court dismiss Yates'

11

first ground for relief as it relates to the failure of the Akron Municipal Court to obtain jurisdiction over him and dismiss all of his third ground for relief.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state

12

> court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

 "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Yates' remaining claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.     *Ground one:  Alleged violations of due process and equal protection*[1]

---

[1] Yates has defaulted these claims. He presented them to the state appellate court in his motion to reopen, a motion the state appellate court dismissed as untimely. Because

Yates claims that the procedures used by the municipal court violated his rights to due process[2] and equal protection.  Respondent denies that the municipal court denied any of Yates' rights.

A procedural due process claim asserts that although the deprivation of a constitutionally-protected interest in "life, liberty, or property" may not of itself have been unconstitutional, the procedure by which the deprivation was effected was unconstitutional. *Parratt v. Taylor,* 451 U.S. 527, 537 (1981); *Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty or property").  The constitutional violation occurs not when the deprivation is enacted, but when the state fails to provide due process.  To determine whether a constitutional violation has occurred, a court must determine

> what process the State provided, and whether it was constitutionally adequate.  This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by . . . law.

---

he did not fairly present the claims to the state appellate court, his subsequent raising of the claims in the Ohio Supreme Court came without having first presented the claims on the appellate level.  As was explained earlier, under Ohio law a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *Jester*, 32 Ohio St. 3d. at 154, 512 N.E. 2d at 967.  This court assumes, therefore, that the Ohio Supreme Court's unexplained dismissal of Yates' appeal was the result of failure to raise his claims in the state appellate court before raising them in the Ohio Supreme Court.  Thus, Yates did not fairly present these claims to the highest court in Ohio.  Nevertheless, procedural default is a defense that must be asserted by respondent, and respondent has not asserted that defense as to these claims.  The court, therefore, will consider the merits of these claims.

[2] Yates contends, *inter alia*, that the municipal court violated his rights by failing fully to advise him of his rights during his initial appearance.  This claim is subsumed in Yates' due process claim.

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Courts weigh several factors in making this determination:

> First, the private interest that will be affected by the official action;  second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  The burden is on Yates to prove any allegation that the state's procedures violated his constitutional right to due process.  *See Garlotte v. Fordice*, 515 U.S. 39, 40 (1995).

Yates contends that in a number of respects the actions of the Akron Municipal Court during his initial appearance did not comport with Ohio law.  But whether the Akron Municipal Court strictly followed Ohio law during Yates' initial appearance is not the question.  This court can give no relief based on violations of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  The question is whether the Akron Municipal Court's actions were so deficient as to constitute a violation of the federally protected right of due process, as found in the holdings of the Supreme Court upon materially indistinguishable facts. Yates cites no holding of the Supreme Court to demonstrate that the particular procedures used by the Akron Municipal Court violated his right to due process.  Yates cites *Schroeder v. New York*, 371 U.S. 208 (1962), for the proposition that parties must be notified of proceedings affecting their legally protected rights, but that rule is inapplicable to Yates. Yates does not allege that any proceeding involving his rights took place of which the Akron Municipal Court was required to notify him.  Consequently, Yates fails to support his contention that the Akron Municipal Court violated his right to due process.

15

Yates also alleges that the Municipal Court violated his right to equal protection.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  *See City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985).  The Equal Protection Clause does not prohibit all differences in treatment but merely prevents governmental decisionmakers from treating differently persons who are similarly situated in all relevant respects. *Cleburne,* 473 U.S. at 439; *Richland Bookmart, Inc. v. Nichols,* 278 F.3d 570, 574 (6th Cir. 2002) (stating that the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally").

Alleged violations of equal protection are examined using one of two levels of scrutiny.  When the alleged violation treats persons differently on the basis of a suspect classification or impinges upon a fundamental right, the alleged violation is given strict scrutiny.  *See Cleburne,* 473 U.S. at 439-47;  *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 17 (1973).  Suspect classifications" include classifications based upon race, alienage, national origin, religion, and sex.  *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); *Frontiero v. Richardson*, 411 U.S. 677, 688 (1973).  For purposes of equal protection jurisprudence, "fundamental rights" include the rights protected by the Bill of Rights and the rights to vote, to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment.  *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

If a plaintiff's alleged unequal treatment does not involve a suspect classification or a fundamental right, then the alleged violation is accorded "rational basis review."  In that

16

case, the plaintiff must show that the alleged differential treatment is not rationally related to any conceivable legitimate legislative purpose.  *See Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973).  The burden on plaintiff to make such a showing is unusually heavy:

> [R]ational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."  For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.  Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.  Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification."  Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."
>
> A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification.  "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."  A statute is presumed constitutional and "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," whether or not the basis has a foundation in the record.  Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends.  A classification does not fail rational-basis review because it "'is not made with mathematical nicety or because in practice it results in some inequality.'"  "The problems of government are practical ones and may justify, if they do not require, rough accommodations-illogical, it may be, and unscientific."

*Heller v. Doe by Doe*, 509 U.S. 312, 319-20 (1993) (citations omitted); *see also Hadix v. Johnson*, 230 F.3d 840, 843 6th Cir. 2000).

Yates' allegations do not implicate any suspect classification, nor does Yates demonstrate that any alleged violation of Ohio law violates a fundamental right as found by the Supreme Court.  Thus, his alleged violation of equal protection must be accorded

rational basis review.  Yates does not demonstrate or attempt to demonstrate that the procedures of the Akron Municipal Court are without any reasonably conceivable rational basis.  Absent such a showing, this court must presume that the Akron Municipal Court's procedures do not run athwart the Equal Protection Clause.

For the reasons given above, the magistrate judge recommends that the court dismiss the remainder of Yates' first ground for relief.

B.      Ground two:  Alleged failure of the state appellate court to adequately review Yates' appeal

Yates alleges that he was denied an adequate review of his conviction in violation of the First, Sixth, and Fourteenth Amendments to the Constitution.  Although Yates alleges inadequate review, presumably a due process violation,[3] the substance of most of his claim is that the state appellate court permitted Yates' appellate attorney ineffectively to represent Yates in the appellate court.  Yates also contends that his application to reopen should not have been denied for untimeliness.  Respondent denies that Yates was denied an adequate appeal.

Yates' contention that the state appellate court permitted Yates' attorney ineffectively to represent him does not state a constitutional violation.  While criminal appellants are

_____

[3] There has never been a federal constitutional right to an appeal.  *Abney v. United States*, 431 U.S. 651 (1977); *Hollin v. Sowders*, 710 F.2d 264, 267 (6th Cir. 1983); *Horton v. Bomar*, 335 F.2d 583, 584 (6th Cir. 1964).  However, "if a State has created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution."  *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (quoting *Griffin v. Illinois*, 351 U.S. 12, 18 (1956)).  Thus, an allegation that a petitioner was denied an adequate appeal probably charges a violation of the right to due process.

18

entitled to effective assistance of counsel on the first appeal, the right to effective appellate counsel is not self-actualizing.  A court may not *sua sponte* interfere in an attorney's representation of a client by pointing out shortcomings in the attorney's performance. Yates cites no holding of the Supreme Court to suggest that such a practice is permissible, much less required.  A criminal appellant who believes that counsel is ineffective must raise a claim of ineffective assistance of counsel in the proper court and argue the merits of that claim.

Examination of the docket of the state appellate court in Yates' appeal shows that although Yates requested that his counsel be removed and new counsel appointed, there is no indication that Yates raised a claim of constitutionally ineffective assistance of counsel during his appeal.  *See* Court Docket, Petition, Exh. B-2.  Nor does Yates allege that he raised the issue of ineffective assistance of appellate counsel before filing his motion to reopen.  As Yates did not assert his right to effective assistance of appellate counsel by raising the issue in the state appellate court during his appeal, he cannot obtain habeas relief by claiming that the state appellate court failed to secure his right.

As regards Yates' claim that the state court should not have denied his motion to reopen, Yates argues, "[T]he pro se application for reopening should not have been denied for untimeliness; based on the related information competent counsel would have had difficulty meeting the 90 day time frame:  a layman is placed in a virtually impossible situation."  Memorandum in Support of Petition, pp. 9-10.  Yates cites no holding of the Supreme Court that a 90 day period within which to file a claim of ineffective assistance of appellate counsel is a violation of due process, nor does this court know of any such holding.  Yates fails, therefore, to demonstrate that he should be granted habeas relief

19

because the state appellate court should not have denied his application to reopen.

For these reasons, the magistrate judge recommends that the court overrule Yates' second ground for relief.

C.    *Ground four: Whether the state appellate court erred in denying Yates redress*

Yates argues that the state appellate court did not properly review the issues presented to it and misstated the facts of the case. In particular, Yates contends that the state appellate court 1) failed to reverse the trial court's sentence as a violation of the holding in *Blakely v. Washington*, 542 U.S. 296 (2004); 2) failed to reverse the trial court's sentence of a greater than minimum sentence without making findings in open court; and 3) failed to reverse the trial court's acceptance of a guilty plea in violation of Ohio's procedural rules. The court will examine each of these arguments in turn.

1) *Failure to reverse an alleged violation of Blakely*

Yates argued in the state appellate court that the trial court erred when it imposed a sentence greater than the statutory maximum to which it could have sentenced him without making judicial findings of fact prohibited by *Blakely*. The state appellate court overruled this claim because it erroneously found that *Blakely* did not apply to Ohio's sentencing scheme.[4]

*Blakely* clarified a rule first stated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Apprendi* held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301. *Blakely* defined *Apprendi's*

---

[4] In *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), the Ohio Supreme Court later found that *Blakely* did, indeed, apply to Ohio's sentencing scheme.

20

"statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"  *Id.* at 303 (emphasis in original).  The statutory maximum is not the maximum sentence allowed by statute after the judge finds additional facts but the maximum the judge may impose without any additional factual findings.  *Id.* at 303-04.

At the time of Yates' conviction Ohio Rev. Code § 2929.14 ("§ 2929.14") governed sentencing in Ohio.  Section 2929.14(B) & (C) provided as follows:

> (B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G)[5] of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
>
> (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
>
> (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
>
> (C) Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.

Section 2929.14(A)(2) provided that for a felony of the second degree "the prison term shall be two, three, four, five, six, seven, or eight years."

Yates was sentenced to a prison term of four years for burglary, a felony of the

---

[5]  Sections 2929.14(D) & (G) were not applicable to Davis's offense.

second degree.  If Yates had gone to trial, the trial court could have sentenced Yates to a term of four years only if it found that Yates was serving a prison term at the time of the offense or previously had served a prison term or found that the shortest prison term would demean the seriousness of Yates' conduct or would not adequately protect the public from future crime by Yates or others.  Indeed, the court sentencing Yates explicitly found that anything less than the four-year sentence would demean the seriousness of his crime and would not protect society from future crimes by Yates.

At the time of Yates' sentencing, Ohio Rev. Code § 2929.12 ("§ 2929.12") governed the factors for courts to consider in felony sentencing when determining the seriousness of a crime and the likelihood of recidivism.  Section 2929.12 provides that courts *shall* consider the factors enumerated in subsections (B) and (C), dealing with the seriousness of the offense, and subsections (D) and (E), dealing with the likelihood of recidivism.  Thus, at the time of Yates' sentencing Ohio law required the court to make explicit or implicit findings of fact regarding every factor enumerated in § 2929.12(B), (C), (D), & (E).  Some of these factors related to prior convictions and do not run contrary to the holdings in *Apprendi* and *Blakely*.  But most of the required findings of fact required by §§ 2929.14(B) & (C) and 2929.12(B), (C), (D), & (E) required judicial fact-finding of the very sort barred by *Blakely*.  It was for this reason that the Ohio Supreme Court overturned § 2929.14(B) & (C) as unconstitutional in light of *Blakely*.

Nevertheless, Yates' sentence is not directly contrary to the holding in *Blakely*. *Blakely* involved a defendant who pleaded guilty, and although the state recommended a sentence within the range of 49 to 53 months, the court sentenced Blakely to 90 months' imprisonment.  In the instant case, Yates negotiated a plea agreement whereby the count

22

of aggravated burglary was reduced to burglary and all other counts were dismissed in return for a recommendation that Yates be sentenced to four years' imprisonment.  The sentencing court followed the state's sentencing recommendation.  *See* Transcript of Proceedings ("Tr."), attached to Application for Reopening, Answer/Return of Writ ("Answer"), Exh. 12, p. 9.

*Blakely* does not stand for the proposition that a defendant may not negotiate a reduced charge on one count and the dismissal of other charges in return for a sentence that would exceed the statutory maximum for the remaining charge *and the court's sentence is then consistent with the negotiated sentence*.  Yates sentence is not, therefore, directly contrary to *Blakely*, nor does this court know of any holding of the Supreme Court that would prohibit a negotiated sentence if the court follows the recommendation negotiated by the defendant.  Thus, although the state appellate court erred in finding that *Blakely* did not apply to Ohio's sentencing scheme, it reached the correct decision in refusing Yates relief on the basis of *Blakely*.

As Yates' sentence is not directly contrary to any holding of the Supreme Court, he cannot receive habeas relief on this claim.  For this reason, the magistrate judge recommends that the court overrule Yates' fourth ground for relief as it relates to a failure of the state appellate court to reverse the sentence of the trial court for a violation of the holding in *Blakely*.

2.      *Failure to reverse a greater than minimum sentence imposed without making findings in open court*

Yates argues that the state appellate court erred by refusing to overturn the sentencing court's imposition of a greater than minimum sentence without making findings

23

in open court as required by Ohio law.  The state appellate court found that Yates' attorney failed to object to the sentencing procedure and bring any error to the attention of the trial court at that time and that, therefore, Yates had forfeited such error on appeal.  Yates now concedes that his attorney should have objected contemporaneously, but he further argues that the sentencing court "failed to provide 'notice' that such findings would be rendered. Or that same findings were necessary to impose a greater than authorized sentence upon the Petitioner."  Memorandum at 31 (punctuation in the original).

Whether the sentencing court's failure to make findings in open court when imposing a minimum sentence violated Ohio law is not the issue before this court.  As already noted, this court cannot grant relief based solely on errors in applying state law.  This court can only grant relief if such errors violate federal law as found in the holdings of the Supreme Court arising from materially indistinguishable facts.  Yates does not cite, nor does the court know of any, Supreme Court holding arising from materially indistinguishable facts declaring that the alleged violations of Ohio law violate any of Yates' rights protected by federal law.  For this reason the magistrate judge recommends that the court overrule Yates' fourth ground for relief as it relates to a failure of the state appellate court to reverse the sentence of the trial court for failing to make appropriate findings in open court.

3.    *Failure to reverse acceptance of a plea in violation of Ohio procedural rules*

Yates argues that the state appellate court also erred by refusing to reverse the sentencing court's acceptance of his plea of no contest despite violations of Ohio procedural rules.  More particularly, Yates seems to contend that the trial court failed to conduct a colloquy sufficient to ensure that Yates understood the charges against him and

24

the potential penalties involved and that Yates' plea was voluntary.[6]

During Yates' sentencing hearing, the court entered into the following colloquy with

Yates:

> THE COURT:  Mr. Yates, it's my understanding you are going to enter a guilty plea to the count as amended to burglary, a felony of the second degree – or no contest plea to the charge of burglary, a felony of the second degree, is that correct?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Are you making this plea of . . . no contest of your own free will?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Do you understand . . . that by entering a plea of no contest that you give up certain rights, including your right to have a trial by jury in this matter?
> Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  If you choose to go forward with your trial, you would have the right to subpoena witnesses who would be required by law to appear pursuant to a subpoena and testify on your behalf; do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  You would also have the opportunity through your lawyer to question or confront each of the State's witnesses who would testify against you; do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  You have a constitutional right not to take the witness stand in your own defense and should you choose to go to trial, no one could force you to

---

[6] Although Yates directly cites only Ohio law as requiring that a defendant's plea be knowing and voluntary, he quotes Ohio cases which in turn cite Supreme Court precedent and the United States Constitution on these issues.  This is sufficient in the case of a *pro se* petitioner to raise a federal constitutional question.

do so; do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  The last right you give up by entering this plea is that the State of Ohio would have to prove your guilt to a jury or the court beyond a reasonable doubt on this charge; do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  In terms of a possible sentence, do you understand the Court could sentence you to prison anywhere for a minimum of two years up to a maximum of eight years for this offense?

THE DEFENDANT:  Yes.

THE COURT:  Further, you are subject to between three and five years of post-release control; do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If  you are placed on post-release control and have certain violations, that stricter conditions can be placed on you during that period.

THE DEFENDANT:  Yes,

THE COURT:  If there are certain violations committed while on post-release control, you are subject to having any sentence this Court hands out enhanced or increased in increments up to one half of your given sentence; do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied with the legal representation that you have had from Attorney Loepp in this matter?

THE DEFENDANT:  Yes.

THE COURT:  Is there anything at all about these proceedings so far that you do not understand?

THE DEFENDANT:  No.

Tr. at 5-8.

In reviewing this claim at the state level, the state appellate court made the following relevant findings:

>  Mr. Yates alleges that he did not understand the nature of the charge against him, and therefore the trial court erred in accepting his no contest plea.  Crim.R. 11(C)(2)(a) requires a colloquy between the trial court and the defendant to ensure that the plea is knowing, voluntary and intelligently made.  *State v. West,* 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 16.  On review, we find that the trial court conducted that colloquy by directly engaging Mr. Yates in conversation regarding the nature of the charges, the no contest plea and his rights.  Upon specific inquiry by the trial court, Mr. Yates stated expressly and unequivocally that he understood the charges against him, that he understood the constitutional rights he would forego by pleading no contest, and that he understood the significant prison term he would face as a result of his plea.  This assignment of error is overruled.

*State v. Yates*, 2005 WL 1875807, at *2 (Ohio App. Aug. 10, 2005).

The transcript of the plea hearing makes it plan that the court informed Yates of the nature of the charge to which he would plead, the potential penalties for his plea, and the rights he would give up by pleading no contest.  Yates told the court that he understood what the court had told him and that he was making his plea of his own free will.  Having represented to the court that he understood the charges and the consequences of his plea and that he was pleading of his own free will, this court will not now hear him say otherwise.  Moreover, Yates fails to provide the clear and convincing evidence needed to overcome the presumption that the state appellate court was correct in finding that his plea of no contest was knowing and voluntary.

For this reason, the magistrate judge recommends that the court overrule Yates' fourth assignment of error as it relates to a failure of the state appellate court to overturn Yates' plea of no contest because it was not knowing and voluntary.

III

For the reasons given above the magistrate judge recommends that the court deny

27

Yates' petition for a writ of habeas corpus.


Date:  April 9, 2007                    /s/Patricia A. Hemann_____
                                        Patricia A. Hemann
                                        United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).