UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANNIE V. YATES, | ) | CASE NO. 5:06CV1940 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JULIUS WILSON, | ) | |
| | ) | |
| RESPONDENT. | ) | |
| | ) | |

This action is before the Court upon the Report and Recommendation of Magistrate Judge Patricia A. Hemann. (Doc. No. 12.) Petitioner Dannie V. Yates has filed his objections. (Doc. No. 14.) For the following reasons, the Report and Recommendation is **ADOPTED** and Petitioner's Writ of Habeas Corpus (Doc. No. 1) is **DENIED**.

**I.**

**INTRODUCTION**

On August 14, 2006 Petitioner filed an Application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254,[1] challenging the constitutionality of his state court conviction for burglary and raising four grounds for relief:

> **GROUND ONE**: Trial court did not obtain jurisdiction.
>
> A: Municipal court failed to give full advisement of rights during initial appearance hearing. B: A[n] illegal unconstitutional program was used to void rights. C: Defendant's [sic] processed by the Akron Municipal Courts are predisposed to indictment prior to the initial appearance [sic] hearing. D: Indictments are not obtained pursuant to

---

[1] The matter was originally assigned to the docket of the Honorable Christopher A. Boyko. The action was transferred to the docket of the undersigned on March 26, 2007.

Ohio law; they are obtained by the use of an illegal, "therefore unconstitutional" procedure.

**GROUND TWO**: Petitioner was denied adequate review of conviction.

The Appellant [sic] Court was aware that Appellant [sic] counsel was performing substandardly and failed to assist in providing competent counsel. The Court also, "although requested by Petitioner", failed to inform that appeal had been dismissed, which severely hampered Petitioner in filing a timely application for reopening.

**GROUND THREE**: Petitioner was subjected to ineffective assistance of counsel.

Counsel failed to timely prosecute appeal causing dismissal. Counsel had appeal reinstated, but, still proceeded ineffectively, i.e., not adequately addressing issue's [sic] presented; presnting [sic] highly questionable issue's [sic]; not presenting major constitutional violations, although being aware of them; failing to keep the Petitioner informed of appeals status.

**GROUND FOUR**: Appellant [sic] court erred in its ruling denying Petitioner redress.

The Appellant [sic] Court did not review the issue(s) presented in regards to Ohio law, the constitution of Ohio or the United States Constitution. The Appellant [sic] Court misstated fact(s).

Respondent Julius Wilson filed a Return of Writ on February 9, 2007. The Court referred the matter to Magistrate Judge Patricia A. Hemann for the preparation of a Report and Recommendation ("R&R"). The Magistrate Judge submitted her R&R on April 9, 2007 (Doc. No. 12), concluding (1) that Petitioner had procedurally defaulted part of his first ground for relief (failure to obtain jurisdiction due to a faulty indictment) and his entire third ground for relief (ineffective assistance of appellate counsel); and (2) that Petitioner had not met his burden of demonstrating a constitutional violation that would warrant habeas relief with respect to the

remaining grounds. Ultimately, the Magistrate Judge recommended that each and every claim for relief be denied.

## II.

## STANDARD OF REVIEW

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Court provides: "The judge must determine *de novo* any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation."

With respect to challenges to determinations made by the appellate state courts in petitioner's case, this Court has a very limited scope of review. In Section 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress enacted a rebuttable presumption that a federal court may not grant habeas relief from a state court conviction if the last state court adjudicated "on the merits" the same federal law question that is presented to the federal court. Congress further created two exceptions to that bar. Specifically, a federal court may grant habeas relief where the state court adjudication is either "contrary to" or "involved an unreasonable application of" settled federal law, as decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Where a ruling in state court is "on the merits," this Court must give deference to the state court. *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir. 2006); *see also McKenzie v. Smith*, 326 F.3d 721, 726-7 (6th Cir. 2003).

## III.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 29, 2002, the Summit County Grand Jury indicted Petitioner on one count each of aggravated burglary, intimidation of a crime victim or witness, disrupting public service and possessing criminal tools, and on two counts of domestic violence. Petitioner initially entered not guilty pleas on all charges. Subsequently, he agreed to plead no contest to the lesser offense of second-degree burglary and to be sentenced to four years imprisonment and up to three years of post-release control in exchange for dismissal of all other charges in the indictment. On September 29, 2003, Petitioner entered his plea of no contest and the court sentenced him to the agreed-upon four years imprisonment and up to three years of post-release control.[2] The appeal process that ensued is somewhat confusing and difficult to follow. It essentially broke down into three paths, all of which eventually led to the Ohio Supreme Court: (1) the direct appeal; (2) the *pro se* motion to reopen; and (3) the *pro se* state habeas petition.[3]

---

[2] Note that Petitioner was released from prison on October 12, 2006 and is currently under post-release control pursuant to a journal entry in the case of *State v. Yates*, Case No. 2002-10-3025 (Summit County 2003). (*See* Doc. No. 11, Exh. 1.)

[3] Note that at various stages of the appeals process, Petitioner acted *pro se*, while at other times he was represented by counsel. If motions or other documents were filed *pro se*, they will specifically be identified as such in this Opinion. If a particular motion or memorandum is not specified as being *pro se*, then the reader can assume Petitioner was acting through his attorney.

**A. The Direct Appeal**

On October 27, 2003, Petitioner, acting *pro se*, filed a notice of appeal, challenging his conviction and sentence; however, the state appellate court dismissed it on November 9, 2004 because Petitioner had not filed a merit brief. (Doc. No. 11, Exhs. 6-7.) After denial of his motion for reconsideration, Petitioner filed an application to reopen his direct appeal asserting that counsel had been constitutionally ineffective in failing to file the appellate brief.[4] (Doc. No. 11, Exh. 12.) On February 28, 2005, the state appellate court granted reopening of Petitioner's direct appeal. (Doc. No. 11, Exh. 14.) On August 10, 2005, the state appellate court overruled Petitioner's assignments of error and affirmed the judgment of the trial court. *State v. Yates*, Case No. 21790, 2005 WL 1875807 (Ohio App. Aug. 10, 2005). On September 26, 2005, Petitioner appealed that decision to the Ohio Supreme Court which denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 11, Exh. 21.)

**B. The *Pro Se* Motion to Reopen**

On November 14, 2005, while his counseled direct appeal was still pending before the Ohio Supreme Court, Petitioner filed a *pro se* motion to reopen his direct appeal with the state appellate court. (Doc. No. 11, Exh. 22.) In his application, Petitioner asserted his appeal should be re-opened due to ineffective assistance of appellate counsel. On December 19, 2005, the state appellate court dismissed Petitioner's application to reopen as untimely. (Doc. No. 11, Exh. 24.) Petitioner timely filed a *pro se* notice of appeal and jurisdictional memorandum with the Ohio

---

[4]Interestingly, Petitioner's attorney, Luis Santos, argues in this application that he himself had been ineffective as appellate counsel: "Undersigned counsel failed to file a brief, which resulted in the dismissal of Mr. Yates' case. Counsel also failed to secure all the available transcripts in this case. Counsel never performed as an advocate for Mr. Yates. This lack of representation constitutes the ineffective assistance of counsel." (Doc. No. 11, Exh. 12 at 6.)

Supreme Court. On March 8, 2006, the Ohio Supreme Court dismissed the appeal without opinion. (Doc. No. 11, Exh. 31.)

### C. The *Pro Se* State Habeas Petition

While his direct appeal and *pro se* motion to reopen were working their way through the court system, Petitioner also filed a *pro se* state habeas petition in which he argued that he had been denied due process and equal protection of law when he was not given a preliminary hearing. Petitioner contended that this violation deprived the trial court of jurisdiction in his original criminal case. The state trial court dismissed the habeas petition because the direct appeal of Petitioner's conviction was still pending at that time. (Doc. No. 11, Exh. 32.) On September 8, 2005, the state appellate court affirmed the judgment of the trial court. Petitioner then filed a *pro se* appeal to the Ohio Supreme Court. On March 8, 2006, the Ohio Supreme Court denied Petitioner's leave to appeal and dismissed for lack of any substantial constitutional question. (Doc. No. 11, Exh. 35.) Having exhausted his state remedies, Petitioner sought federal habeas corpus relief.

## IV.

## DISCUSSION

### A. Alleged Right to an Evidentiary Hearing

In his objections to the R&R (Doc. No. 14), Petitioner argues that an evidentiary hearing is necessary to adequately decide the issues in his case. The Magistrate Judge found no need for an evidentiary hearing because "all Petitioner's claims involve legal issues that can be independently resolved without additional factual inquiry." (Doc. No. 12, at 7.)

"If a habeas petitioner has failed to develop the factual basis of a claim in state court proceedings, he can only get an evidentiary hearing in federal district court in extremely narrow

circumstances." *Alley v. Bell*, 307 F.3d 380, 389 (6th Cir. 2002). Specifically, under 28 U.S.C. § 2254(e)(2), a petitioner must show that:

>(A) the claim relies on-
>
>(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Upon review of the record, the Court agrees with the Magistrate Judge's conclusion that Petitioner fails to demonstrate the necessity for an evidentiary hearing based upon any of the Section 2254(e)(2) provisions.

**B.  Procedurally Defaulted Claims**

Petitioner objects to the Magistrate Judge's conclusion that he procedurally defaulted on part of ground one (as it relates to the issue of jurisdiction) and all of ground three (ineffective assistance of appellate counsel). The Court finds these objections to be without merit.

Federal habeas review of procedurally defaulted claims is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). However, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in absence of a showing of

cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006).

### 1. Ground one as it relates to jurisdiction

Ground one, in relevant part, alleges that the Akron Municipal Court utilized a faulty indictment and therefore never had jurisdiction over Petitioner. The Magistrate Judge concluded that, because petitioner failed to raise this claim in the trial court pursuant to Ohio Crim.R. 12(C)(2), he was deemed to have waived it and would not be permitted to raise it here.

Petitioner asserts in his objections that he failed to raise this claim in the trial court for two reasons: (1) because his trial counsel allegedly failed to file any requested motions regarding the matter; and (2) because the trial court barred Petitioner from filing *pro se* motions while he was represented by counsel. (Doc. No. 14 at 1.)

With regard to Petitioner's first argument, the Supreme Court has held: "[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington* [466 U.S. 668, 690 (1984)], we discern no inequity in requiring him to bear the risk of attorney error that results in procedural default." *Murray*, 477 U.S. at 488.[5]

---

[5] The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 690 (1984) held:

> A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in a particular case. At the same time, the court should recognize that counsel is

Upon review of the record, the Court finds no evidence demonstrating the alleged illegality of the indictment. Thus, there was no failure of Petitioner's trial counsel to file motions challenging the indictment, much less any action that was unreasonable or "outside the wide range of professionally competent assistance," as required by the Court in *Strickland*. Moreover, even if his trial counsel's performance was found to be deficient under the *Strickland* standard, Petitioner would nonetheless be barred from asserting attorney ineffectiveness as cause to excuse the procedural default. "[T]he exhaustion doctrine [. . .] generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray,* 477 U.S. at 488-89. On review of the record, the Court finds that Petitioner never timely raised a claim of trial counsel ineffectiveness during the state court proceedings. Petitioner is therefore barred from using that claim to establish cause for his procedural default.

With regard to Petitioner's assertion that he failed to raise his jurisdictional argument in the trial court because he was barred from filing *pro se* motions while represented by counsel, this Court is also not persuaded. Although criminal defendants have a Sixth Amendment right to proceed *pro se*, *see Faretta v. California*, 422 U.S. 806, 814-18 (1975), they have no right to "hybrid representation," that is, simultaneously representing oneself while being represented by an attorney. *U.S. v. Green*, 388 F.3d 918, 922-23 (6th Cir. 2004); *U.S. v. Mosely*, 810 F.2d 93, 97-98 (6th Cir. 1987). "The right to defend *pro se* and the right to counsel have been aptly described as 'two faces of the same coin,' in that waiver of one constitutes a correlative assertion of the other. *** [F]or

---

strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

9

purposes of determining whether there has been a deprivation of constitutional rights a criminal defendant cannot logically waive or assert both rights." *Mosely*, 810 F.2d at 97-8. Further, the decision as to whether to allow "hybrid representation" is left to the discretion of the trial court. *Green*, 388 F.3d at 922 (quoting *Mosely*, 810 F.2d at 98).

In the instant case, the trial court ordered Petitioner to stop filing *pro se* motions while he was represented by counsel. (Doc. No. 1, Exh. F.) Essentially, Petitioner was given a choice: either continue to be represented by counsel or proceed *pro se*. By choosing to continue with his appointed counsel, Petitioner waived his right to file any motions *pro se*. Therefore, he cannot use this reasoning to establish cause for his procedural default.

Petitioner also argues, in the alternative, that he did in fact raise the defective indictment issue at the trial court level and, therefore, has not procedurally defaulted that claim. Specifically, Petitioner states: "the defective indictment issue surrounds the lower courts [sic] failure to advise Petitioner of Ohio law concerning preliminary hearings." (Doc. No. 14 at 1.) Because he did file a *pro se* motion in the trial court that concerned preliminary hearings, Petitioner argues that he did not procedurally default on the indictment issue.

Petitioner is misguided. Although he did apparently file a *pro se* motion to dismiss in the trial court based upon the court's failure to hold a preliminary hearing (*see* Doc. No. 12 at 1-2), that claim is separate and distinct from the defective indictment contention. A claim faulting the trial court for failing to hold a preliminary hearing is best characterized as a due process claim. In contrast, Petitioner's allegation that his indictment was somehow defective is a challenge to the trial court's jurisdiction. This Court concludes that Petitioner never raised the jurisdictional issue in the

10

trial court, has not demonstrated "cause" for his failure to do so, and has, therefore, procedurally defaulted that part of ground one.

### 2. Ground three: Ineffective assistance of appellate counsel

In ground three, Petitioner alleges he was deprived of effective assistance of appellate counsel in violation of the Sixth Amendment. The Magistrate Judge concluded that although Petitioner did present this claim to the state appellate court in the context of his *pro se* motion to reopen, he failed to present it as an independent claim to the Ohio Supreme Court and thus had procedurally defaulted the claim. Petitioner objects, arguing that "although not properly set and worded the memorandum to the Ohio Supreme Court does allow the Court to review the ground of ineffective assistance of appellant [sic] counsel." (Doc. No. 14 at 2.) Upon review of Petitioner's jurisdictional memorandum, the Court disagrees.

In his jurisdictional memorandum to the Ohio Supreme Court, Petitioner alleges that the state appellate court "violated [his] right to Redress, Due Process, and Equal Protection by knowingly allowing the appeal process to be subjected to ineffective assistance of counsel, and thereafter denying [petitioner's] application for reopening [. . .] when the [appellate] court itself contributed to the improper filing of said application." (Doc. No. 11, Exh. 30 at 5) (punctuation altered.) Further, Petitioner set forth the following "Constitutional Question": "When the review tribunal aids in and/or is a significant factor of Appellant's appeal process being deficient, has a constitutional violation occurred that is of a nature of serious prejudicial harm?" (Doc. No. 11, Exh. 20 at 5) (punctuation altered).

The arguments set forth in Petitioner's *pro se* jurisdictional memorandum to the Ohio Supreme Court (Doc. No. 11, Exh. 30) center around allegations that the appellate court violated

11

Petitioner's constitutional rights. Notably, Petitioner does not independently present and develop the ineffective assistance of appellate counsel claim. Petitioner does not discuss the standard for ineffective assistance of counsel, nor does he analyze whether his attorney was ineffective under that standard. Instead, Petitioner directs his arguments at perceived errors made by the state appellate court. The Court agrees with the Magistrate Judge's conclusion that Petitioner has procedurally defaulted this issue because he failed to present it as an independent claim to the Ohio Supreme Court.

## C. The Remainder of Petitioner's Claims

### 1. Alleged violations of due process and equal protection

Petitioner alleges in the remainder of ground one that the procedures used by the Akron Municipal Court violated his due process and equal protection rights. More specifically, Petitioner takes issue with the fact that he was indicted by a grand jury and therefore not given a preliminary hearing. Presumably, the equal protection claim stems from Petitioner's belief that, by not receiving a preliminary hearing, he was treated differently from other similarly situated felony defendants.

The Magistrate Judge rejected both claims.[6] With regards to the due process claim, the Magistrate Judge concluded that Petitioner did not demonstrate that "the Akron Municipal Court's actions were so deficient as to constitute a violation of the federally protected right of due process, as found in the holdings of the Supreme Court upon materially indistinguishable facts." (Doc. No. 12 at 15.) With regard to the equal protection claim, the Magistrate Judge first determined

---

[6]The Magistrate Judge first noted that Petitioner had procedurally defaulted these claims, but that, because Respondent failed to raise procedural default as a defense, she would address the merits of the claims. (Doc. No. 12 at 13 n.1.)

12

that rational basis review should apply because Petitioner failed to demonstrate that his claim implicated a suspect classification or that any alleged violation of Ohio law infringed upon a fundamental right. Applying the rational basis test, the Magistrate Judge concluded that Petitioner failed to demonstrate, or even attempt to demonstrate, that the Akron Municipal Court procedures were without any reasonably conceivable rational basis. She therefore rejected Petitioner's equal protection claim.

In his objections, Petitioner responds by merely restating his contention that the direct indictment (bindover) procedure used by the Akron Municipal Court violates his equal protection and due process rights. However, Petitioner cites no Supreme Court case that voids materially indistinguishable, or even similar, direct indictment procedures. Therefore, the Court concludes that Petitioner's objections here are without merit.

### 2. Alleged failure of state appellate court to adequately review Petitioner's appeal

In ground two, Petitioner alleges that the state appellate court erred in denying him redress, that it did not properly review the issues presented to it, and that it misstated the facts of the case. Although Petitioner alleges inadequate review, presumably a due process violation, the substance of most of his claim is that the state appellate court permitted petitioner's attorney to ineffectively represent him. In addition, Petitioner contends that his *pro se* motion to reopen should not have been denied for untimeliness. The Court will address each claim separately.

### a. Petitioner's assertion that the state appellate court erred by allowing him to be subjected to ineffective assistance from his appellate counsel

The Magistrate Judge concluded that Petitioner's contention that the state appellate court permitted petitioner's attorney to ineffectively represent him does not state a constitutional violation because a court may not *sua sponte* interfere in an attorney's representation of a client. As the Magistrate Judge rightly noted, in order to bring a claim for ineffective assistance of counsel, Petitioner would have to raise and argue that claim himself.

Petitioner objects to the Magistrate Judge's finding, asserting that "there is no precedent that an appellant must raise ineffective assistance of appellant [sic] counsel prior to filing an application for reopening." (Doc. No. 14 at 5.) However, determination of Petitioner's claim does not at all depend on the existence of such precedent. In order to prevail on this claim Petitioner would instead need to cite a Supreme Court holding that state appellate courts have a constitutional obligation to interfere *sua sponte* to protect criminal defendants from sub-par assistance from appellate counsel. As the Magistrate Judge noted, Petitioner cites no holding of the Supreme Court to suggest that state appellate courts should, or even may, interfere in such a way. Thus, the Court agrees with the Magistrate Judge's conclusions and overrules Petitioner's objections with regard to this claim.

### b. Petitioner's contention that the state appellate court erred by denying his *pro se* motion to reopen as untimely

The Magistrate Judge also rejected Petitioner's claim that the state appellate court erred by denying his *pro se* motion to reopen as untimely. She based her denial of Petitioner's claim on the fact that Petitioner failed to cite any Supreme Court holding that a 90-day period within which

to file a claim of ineffective assistance of trial counsel violates due process. In his objections, Petitioner clarifies that he did not intend to challenge the 90-day time frame itself:

> There is no assertion that the 90 day time frame which to file an application is or was a violation. Contention is where the Appellant [sic] Court and counsel cased [sic] delay by failure to properly/timely inform Petitioner of appeals affirmation the untimely filing of application must not be cause for procedural default. Within Petitioner's motion for reconsideration from the denial of reopening Petitioner demonstrated to the appellant [sic] court of the untimely notice and further pointed out that Petitioner did submit the application within a 90 day time frame from actual notice. Ohio law require's [sic] that an application for reopening be filed with the clerks [sic] office within 90 days from journalization of the appeals affirmation.

(Doc. No. 14 at 5.)

As this Court understands it, Petitioner alleges here that the appellate court somehow caused him to be late in filing his *pro se* motion for reopening or, in the alternative, that Petitioner actually did file within the 90-day period. However, Petitioner produces no evidence to support either contention. Furthermore, Petitioner fails to demonstrate to this Court how the actions of the state appellate court constitute a cognizable claim for purposes of federal habeas. Therefore, the Court rejects Petitioner's objections.

### 3. Alleged errors made by state appellate court in denying Petitioner redress

In ground four, Petitioner argues that the state appellate court did not properly review the issues presented to it and misstated the facts of the case. More specifically, Petitioner contends that the state appellate court (1) failed to reverse the trial court's sentence as a violation of *Blakely v. Washington*, 542 U.S. 296 (2004); (2) failed to reverse the trial court's sentence of a greater than minimum sentence without making findings in open court; and (3) failed to reverse the trial court's acceptance of a guilty plea in violation of Ohio's procedural rules. The Magistrate Judge recommended denial of each of these claims, and petitioner has objected. The Court will examine each subpart of ground four in turn.

#### a. Failure to reverse an alleged violation of *Blakely*

The Magistrate Judge concluded that, although the state appellate court erred in its finding that *Blakely* does not apply to Ohio's sentencing scheme,[7] Petitioner's sentence was not directly contrary to the holding in *Blakely* and thus should not be disturbed by this Court. Petitioner objects:

> Hypothetically conceding to Respondent's contention that a negotiated sentence would render the *Blakely* decision moot, Petitioner's assertion is to the contrary. *Blakely* cites that factors of sentencing enhancement must be found by the jury or admitted by the defendant. In the case at hand, neither of the aforementioned was had. Further, the court made the enhancement findings after sentencing was imposed, not in open court nor in petitioner's presence (another matter before this Court).

(Doc. No. 14 at 5-6) (punctuation altered and italics added to case names.)

---

[7]Following the Ohio Supreme Court decision in Petitioner's direct appeal, the Ohio Supreme Court, in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), held that *Blakely* does apply to Ohio's sentencing scheme.

Upon review, the Court agrees with the Magistrate Judge's conclusion that Petitioner's sentence was not contrary to the Supreme Court's holding in *Blakely*. The Court therefore overrules Petitioner's objections. The Court in *Blakely* clarified a rule first stated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Apprendi* held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Blakely* defined *Apprendi*'s "statutory maximum" as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely,* 542 U.S. at 303. In other words, the "statutory maximum" is not the maximum sentence allowed by statute after the judge finds additional facts, but rather the maximum that the judge may impose without any additional factual findings. *Id*. at 303-04.

The constitutional problem with the defendant's sentence in *Blakely* was that the judge made additional findings of fact and imposed a greater sentence upon the defendant based on those findings. The Supreme Court concluded that this violated the defendant's Sixth Amendment right to a trial by jury. *Id*. at 313-14. By contrast, in the instant case, Petitioner accepted a plea bargain and was sentenced to the stipulated four-year prison term. Fact-finding by the judge is simply not an issue in Petitioner's case because "[o]nce a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence." *State v. Porterfield*, 106 Ohio St.3d 5, 10, 829 N.E.2d 690, 695 (2005). Because Petitioner received an agreed-upon sentence, the sentencing judge made no findings of fact, nor was he required to do so.  Thus, the Court agrees with the Magistrate Judge's conclusion that Petitioner's sentence was not contrary to the holding in *Blakely*, and, therefore, petitioner's objections are without merit.

17

### b. Failure to reverse a greater than minimum sentence imposed without making findings in open court

Petitioner also argues that the state appellate court erred by refusing to overturn the sentencing court's imposition of a greater than minimum sentence without making findings in open court as required by Ohio law. The Magistrate Judge first noted that the state appellate court, in addressing this claim as part of the direct appeal, found Petitioner had forfeited the claim because his trial attorney failed to object to the sentencing procedure. With that in mind, the Magistrate Judge denied this claim, concluding that it was solely a question of state law and that it did not violate any known federal law as found in the holdings of the Supreme Court arising from materially indistinguishable facts. Petitioner objects, asserting that: "(1) the due process violation regarding notice surrounding enhancement occurred prior to possible objection by trial counsel" and "(2) allowing trial counsel's failure to object would be a grave miscarriage of justice to Petitioner." (Doc. No. 14 at 6.)

The Court finds Petitioner's objections to be without merit.  With regard to his first objection that the due process violation regarding notice occurred prior to possible objection by trial counsel, Petitioner merely states the obvious. It is axiomatic that counsel must wait for a possible violation before he can object; however, once an alleged violation occurs, the counsel must object. Here, counsel failed to do so. With regards to Petitioner's second objection, this Court is also not persuaded. Under Ohio law, the sentencing judge was not required to make findings of fact in open court because Petitioner entered into a plea bargain and received the agreed-upon sentence.  *See Porterfield*, 106 Ohio St.3d at 10.  Thus, the Court finds no "grave miscarriage of justice," as alleged by Petitioner.  Petitioner's objections are overruled.

### c. Failure to reverse acceptance of a plea in violation of Ohio procedural rules

Finally, Petitioner argues that the state appellate court erred by refusing to reverse the sentencing court's acceptance of his plea of no contest. More particularly, Petitioner contends that the trial court failed to conduct a colloquy sufficient to ensure that Petitioner's plea was voluntary and that he understood the charges against him and the potential penalties involved. The Magistrate Judge reviewed the transcript of the plea colloquy and found it clear that Petitioner's plea was knowing and voluntary. Further, the Magistrate Judge found that Petitioner failed to provide the clear and convincing evidence needed to overcome the presumption that the state appellate court was correct in finding his plea of no contest was knowing and voluntary.

> Petitioner objects:
>
> [A]t no time in the trial courts [sic] interrogation during sentencing was Petitioner asked if understanding of the nature of the charge(s) against him were understood. The closest question the court asks Petitioner in regards to the nature of the charge is: "Is there anything at all about these proceedings that you do not understand?" The appellant [sic] court in its decision cited that Petitioner, ". . . stated expressly and unequivocally that he understood the nature of the charge's against him . . ."

(Doc. No. 14 at 6.)

The Court finds Petitioner's argument here to be completely unpersuasive. It is quite clear from the transcript of the plea colloquy that Petitioner's plea was knowing and voluntary. Relevant parts of the transcript are quoted by the Magistrate Judge in her R&R. (Doc. No. 12 at 25-26.) The Court determines that the Magistrate Judge's conclusions on this issue are factually and legally sound, and, therefore, overrules Petitioner's objections.

19

V.

CONCLUSION

For all the foregoing reasons, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge to deny each and every claim in the petition for habeas corpus relief. Petitioner's Writ of Habeas Corpus (Doc. No. 1) is **DENIED**.

**IT IS SO ORDERED**.

Dated: March 19, 2008

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**